**SECURITY STATE BANK, Appellant,**

v.

**VALLEY WIDE ELECTRIC SUPPLY COMPANY, INC. and J.L.D. Construction Company, Appellees.**

No. 13–87–216–CV.

Court of Appeals of Texas, Corpus Christi.

May 26, 1988.

Rehearing Denied June 23, 1988.

Ralph L. Alexander, Edinburg, Russell McMains, Corpus Christi, for appellant.

W. Michael Fisher, Jeffrey D. Roerig, Brownsville, Stephen M. Gano, Houston, for appellees.

Before SEERDEN, UTTER, and BENAVIDES, JJ.

## OPINION

SEERDEN, Justice.

Appellees sued appellant for fraud and misrepresentation, conversion, and breach of contract. Pursuant to a jury verdict, the trial court entered judgment in favor of Valley Wide Electric Supply Co., Inc. (Valley Wide), for $70,000.00 actual damages and $50,000.00 exemplary damages, and in favor of J.L.D. Construction Co. (Drennan) for $75,000.00 actual damages and $150,-

000.00 exemplary damages. Each received prejudgment interest and attorney's fees. Appellant raises eleven points of error. We modify and, as modified, affirm the trial court's judgment.

Drennan was the general contractor for a construction project at Progreso High School. A subcontract for the electrical work was awarded to Jay Sweeney, d/b/a Sweeney Electric Co. (Sweeney). Sweeney contracted for materials with Valley Wide. Sweeney was already indebted to the bank, and after the transaction described below the bank extended further credit to Sweeney.

The bank, through Paul Moxley, its executive vice-president, wrote a letter to Valley Wide, with a copy to Drennan, which stated:

Security State Bank has agreed to extend credit to Mr. John J. Sweeney d/b/a Sweeney Electric Company, and has accepted the assignment of his contract with the Drennan Company as collateral.

It is our understanding that Mr. Sweeney has entered into a contract with the Drennan Company for materials totalling approximately $175,000.00.

The Drennan Company will submit their checks for services jointly to Security State Bank and Sweeney Electric Company. Your billing to Sweeney Electric should be current and payable within 30 days. Please advise me immediately if the account exceeds the 30 day period. Sweeney Electric will present your invoice to me for payment, which will be made by Cashier's Check for the invoice amount.

Please notify me if the arrangement is not suitable or if we can be of further assistance in regards to this account.

By point one, appellant claims that the trial court erred in awarding appellees judgment based on a theory of conversion, contending that money or "funds" may not be the subject of conversion unless specifically identified. Appellant also argues that the trial court erred for the same reason when it denied its Motion for a New Trial, Motion to Disregard Findings, Motion for Judgment, and Reply to Motion filed by Plaintiffs, and granted Plaintiff's Motion to Disregard Jury Findings and Motion to Disregard Findings on Special Issues and for Additional Express Findings.

In response to Special Issues 9, 10 and 11, the jury found that the bank knew that Drennan intended for the bank to use part of the funds Drennan paid to pay Valley Wide's invoices, that it used "such part of the fund" for some other purpose, and that this use was willful, intentional, and without just cause or excuse, or with a conscious indifference to, or in reckless disregard of, the rights and welfare of parties affected by the use of those funds.

Appellant does not challenge the sufficiency of the evidence to support these jury findings. Moxley testified that the funds from the checks Drennan issued for the Progreso job were earmarked to be used, at least in part, to pay Valley Wide. However, the funds were applied to Sweeney's overdrafts and to servicing Sweeney's debt to the bank, and Valley Wide was not paid.

■ A bank which has notice of the trust character of funds may not use those funds to offset a depositor's debt. *Steere v. Stockyards National Bank*, 113 Tex. 387, 256 S.W. 586, 591 (Comm'n App.1923, opin. adopted); *Allied Bank West Loop, N.A. v. C.B.D. & Associates, Inc.*, 728 S.W.2d 49, 58 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *First National Bank v. Winkler*, 146 S.W.2d 201, 205 (Tex.Civ.App. —Austin 1940), *aff'd*, 161 S.W.2d 1053 (Tex.Comm'n App.1942, opin. adopted).

■ The bank claims that it was impossible to determine what amount of Drennan's check was intended for Valley Wide, and points out that the checks themselves did not specify any part that was for Valley Wide. No evidence indicates that the bank attempted to determine the amount. Valley Wide sent invoices to Sweeney, whose account was in overdraft during the time Valley Wide was not being paid. Moxley testified that he approved all of Sweeney's expenditures daily, and that the bank had records of the payments made. Moxley testified that since Sweeney was unable to

make payments without bank approval, the bank was able to obtain the invoices from Sweeney.

By sending the invoices to Sweeney, Valley Wide was conforming to the arrangement Moxley described in his letter. The evidence shows that the bank not only had actual knowledge that funds intended for Valley Wide would be in the account, but that the bank instigated the arrangement.

■ Money can be converted if a bank, with knowledge of its trust character, applies it to reduce a debt to the bank. *Houston National Bank v. Biber*, 613 S.W.2d 771, 774–75 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). In this case, the money was to pay for specific expenses. When a person has designated a particular use for proceeds from a check, those proceeds count as "specific money" capable of conversion. *Southwest Industries Investment Co. v. Berkeley House Investors*, 695 S.W.2d 615, 617 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

■ Moreover, it is the bank's duty to segregate the funds in a mixed account before applying any to overdrafts. *Steere*, 256 S.W.2d at 591; *see also City State Bank v. National Bank of Commerce*, 261 S.W.2d 749, 752 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.).

The bank also argues that appellees failed to obtain a jury finding of a fiduciary agreement or trust arrangement. If the jury finds one or more elements of a ground of recovery, but another element is omitted from the issues submitted, and factually sufficient evidence would support a finding on the element, the judge may make the finding. If the judge makes no written findings, the omitted element is deemed found in support of the judgment. Tex.R.Civ.P. 279.

■ When one person delivers money to another for a specific purpose, the person accepting the money becomes a trustee and the transaction becomes a trust. *City State Bank*, 261 S.W.2d at 752; *First National Bank v. Slaton Independent School District*, 58 S.W.2d 870, 873 (Tex. Civ.App.—Amarillo 1933, writ dism'd).

Evidence supporting the trust character of part of the money includes the bank's letter and Moxley's testimony that he knew part of the funds were earmarked for a specific purpose.

■ Appellant's reply brief also contends that appellee did not adequately plead conversion and was not entitled to submit Issues 9 and 10 or to recover on theories of conversion or of wrongful offset. We have found no objection to the charge based on a lack of pleadings. Thus, appellant waived any right to complain. *See Ortiz v. O.J. Beck & Sons*, 611 S.W.2d 860, 867 (Tex.Civ.App.—Corpus Christi 1980, no writ). We overrule point one.

By point three, appellant attacks any recovery on appellees' contract theory, contending that the trial court erred in setting aside the jury's findings on Issues 2 and 3. Responding to Issue 1, the jury found that the bank had agreed to pay Valley Wide as Sweeney's account became due if Drennan made its checks to both the bank and Sweeney. To Issue 2, the jury answered that the bank's agreement was conditioned on Sweeney's submitting Valley Wide's invoices to the bank, and to Issue 3, it answered that Sweeney did not submit the invoices.

Appellees properly objected to the submission of Issue 2 on the grounds that the contract is in evidence and is clear, unambiguous, and, as a matter of law, not conditioned on Sweeney's submitting invoices.

■ Ambiguity in a contract is a question of law. A fact issue is not created unless the court finds that the contract is ambiguous after applying pertinent rules of construction. *Walker v. Horine*, 695 S.W.2d 572, 577 (Tex.App.—Corpus Christi 1985, no writ); *O'Shea v. Coronado Transmission Co.*, 656 S.W.2d 557, 561 (Tex.App. —Corpus Christi 1983, writ ref'd n.r.e.). If the contract can be given a certain definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Corriveau v. 3005 Investment Corp.*, 697 S.W.2d 766, 767 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). The court will limit its search

for the intent of the parties to the intent expressed within the four corners of a document. *Smith v. Liddell*, 367 S.W.2d 662, 666 (Tex.1963); *Walker*, 695 S.W.2d at 577.

Appellant argues that it was not obligated to pay Valley Wide, contending that the words, "Sweeney will submit your invoices to me for payment," created a condition, and the condition was not met.

While no particular words are necessary to create a condition, terms like "if," "provided that," "on condition that," or a similar phrase usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, to ascertain whether a certain contractual provision is a condition, rather than a promise, one must look to the contract as a whole and the intent of the parties. *Temple–Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex.1984); *Hohenberg Brothers Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976); *Gulf Construction Co. v. Self*, 676 S.W.2d 624, 627 (Tex. App.—Corpus Christi 1984, writ ref'd n.r. e.). The language of a contract will not be construed as creating a condition precedent if another reading of that language is possible. *Powers v. Powers*, 714 S.W.2d 384, 388 (Tex.App.—Corpus Christi 1986, no writ). Courts will not declare a forfeiture unless they are compelled to do so by language which can be construed in no other way. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 530 (Tex.1987); *Gulf Construction*, 676 S.W.2d at 627–28.

In Texas, a writing is generally construed most strictly against its author. *Temple–Eastex*, 672 S.W.2d at 798; *Gulf Construction*, 676 S.W.2d at 628. Moreover, where a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition. *Hohenberg*, 537 S.W.2d at 3; *Gulf Construction*, 676 S.W. 2d at 627.

Moxley admitted that he composed the letter, and that he could compel delivery of the invoices. Since the contract was not ambiguous, the trial court properly dis-

regarded Issue 2, and Issue 3 became irrelevant. We overrule point three.

By point nine, appellant argues that the trial court erred in allowing Stephen Gano to testify to the contents of a written document over an objection that the testimony violated the best evidence rule.

The best evidence rule applies only where the purpose of the evidence is to prove the contents of the writing. *Raymond v. Aquarius Condominium Owners Association, Inc.*, 662 S.W.2d 82, 92 (Tex. App.—Corpus Christi 1983, no writ).

The record shows that Stephen Gano testified that Moxley called in response to a letter Gano had sent Moxley, to clarify things mentioned in the letter. Appellees' attorney asked Gano to tell the contents of the conversation. Gano began, "I had written a letter on May 30th to Paul Moxley, which basically said that we were agreeable to making checks jointly to the bank on certain conditions." Appellant's attorney objected, the court overruled the objection, and Gano continued. No further objection was made when Gano described the condition and then the conversation.

The admission or exclusion of evidence is reversible error only if it was error which was harmful and calculated to cause, and probably did cause, the rendition of an improper judgment. *Howard v. Faberge, Inc.*, 679 S.W.2d 644, 647 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); Tex. R.Civ.P. 81. Any error in the admission of evidence is harmless if that evidence is merely cumulative of evidence to which no objection was made. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984); *Baker Marine Corp. v. Herrera*, 704 S.W. 2d 58, 62 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

Subsequently, appellant's counsel also inquired about the contents of the letter. He then asked appellees to produce it. During recess, appellees located the letter in the bank's files and tendered it to appellant's counsel, who did not admit it into evidence. Finally, appellant elicited testimony from its witness, Moxley, on the contents of the letter. Thus, any error in admitting the

testimony rather than the letter itself was harmless. We overrule point nine.

By points seven and eight, appellant challenges the legal and factual sufficiency of the evidence to support the damage awards to Drennan and to Valley Wide.

■ There is evidence that Drennan paid Valley Wide $68,551.04 which should have been paid to Valley Wide out of Drennan's checks to Sweeney and the bank. Additionally, Stephen Gano of Drennan testified that the bank's failure to pay Valley Wide caused delays which cost Drennan an additional $6,000. This totals $74,551.04. Valley Wide requested $65,554.99, which is supported by plaintiff's exhibit 3, a tally of its invoices minus the money Drennan paid directly. Thus, the awards are excessive.

However, we do not need to disregard the jury's findings on Issues 12 and 13, as appellant suggests. We will modify the judgment to show awards in the amounts the evidence supports. Tex.R.App.P. 80.

■ Appellant challenges the award of exemplary damages by points four, five, and six. Point four claims the trial court erred in the award, contending that appellee has no valid cause of action giving rise to actual damages upon which exemplary damages may be predicted. Under point one, we upheld the award of damages for wrongful offset and conversion of trust funds. This tort gives rise to actual damages and will support exemplary damages. *Accent Builders Co. v. Southwest Concrete Systems, Inc.*, 679 S.W.2d 106, 111 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *First Security Bank & Trust v. Roach*, 493 S.W.2d 612, 618 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). We overrule point four.

Point five cites as error the submission of exemplary damage issues on behalf of each appellee. Appellant claims that any claim of Drennan's was solely derivative of Valley Wide's, and that by allowing the jury to assess exemplary damages both for Drennan and for Valley Wide, it permitted two punishments for a single action.

■ One aspect of appellant's complaint questions the bank's need to be pun-

ished for its action toward Drennan in addition to actions against Valley Wide. In assessing exemplary damages, the jury may consider the situation and sensibilities of the parties. *Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 714 (Tex.1987); *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). Some of the evidence on which the jury may have based its awards includes evidence that the bank actively induced Drennan to pay it instead of paying Valley Wide directly, and by keeping Drennan's money, made Drennan liable to Valley Wide. Evidence showed that the bank also represented to the Small Business Association that it had a security interest in the contract from Drennan, which Drennan denied. There was also evidence that Drennan suffered expensive delays. While Drennan had to pay some bills twice, Valley Wide merely had to wait longer to be paid. There was also evidence that Valley Wide knew from the outset that Sweeney was not credit worthy, and was charging him extra to satisfy a previously unpaid balance. Drennan may have seen the bank's letter as an assurance. Given the impact of the bank's actions, the separate exemplary damage award to Drennan can be justified.

■ The other aspect of appellant's complaint under point of error number five is that the awards to separate plaintiffs is two punishments. A major concern of those disfavoring separate exemplary damage awards is that a defendant will be overpunished by different juries in successive suits. *See* Annot., 11 A.L.R. 4th 1261 (1982).

It appears the weight of authority rejects the argument that exemplary damages should be restricted to one plaintiff. In Texas, separate exemplary awards in the same case have gone unquestioned. *See Alamo National Bank*, 616 S.W.2d at 909, *Kneip v. Unitedbank—Victoria*, 734 S.W. 2d 130, 134–35 (Tex.App.—Corpus Christi 1987, no writ).

In this case, both plaintiffs were before the same jury, which was cognizant of the total award. The jury could apportion the

exemplary damages based on its view of the wrongfulness of the conduct toward each plaintiff. We overrule point five.

■ By point six, appellant urges reversal because Issues 16 and 17, which asked the amount of exemplary damages, were not conditionally submitted. It claims this was a comment on the weight of the evidence.

Issues 16 and 17 begin, "Find from a preponderance of the evidence what sum of money, *if any*, should be assessed ..." (emphasis added). Moreover, the instructions explain that the jury "may" award exemplary damages in addition to "any amount you may have found as actual damages." Thus, the jury was free to award nothing. We overrule point six.

By point eleven, appellant asserts that the exemplary damages awarded to Drennan are excessive.

■ There is no set rule or ratio between the amount of actual and exemplary damages which will be considered reasonable. This determination depends on the facts of each particular case. *Alamo National Bank*, 616 S.W.2d at 910; *Delta Drilling Co. v. Cruz*, 707 S.W.2d 660, 667 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

■ Factors in determining the reasonableness of an award of exemplary damages include the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties, and the extent to which the conduct offends a public sense of justice and propriety. *Wright*, 725 S.W.2d at 714; *Alamo National Bank*, 616 S.W.2d at 910; *Delta Drilling*, 707 S.W.2d at 666.

■ Appellant has not demonstrated that the amount of the award is unreasonable in light of the circumstances, or that the jury was influenced by passion, prejudice, or improper motive. Having reviewed the whole record, we decline to substitute our judgment for that of the jury. We overrule point eleven.

Point ten challenges the award of attorney's fees to both Drennan and Valley Wide, claiming that they did not succeed on a cause of action upon which attorney's fees could be granted and that Drennan did not adduce evidence of the reasonableness of its attorney's fees.

■ Since appellees recovered on a contract cause, they may also receive attorney's fees. Tex.Civ.Prac. & Rem.Code § 38.001(8) (Vernon 1986). Moreover, Tex. Civ.Prac. & Rem.Code § 38.003 (Vernon 1986) supplies a presumption that the usual and customary attorney's fees are reasonable.

■ Stephen Gano testified that he, as Drennan's president, hired an attorney, and that the number of hours spent on the case were necessary, and that he, as an attorney, spent 96 hours and his co-counsel John Gano spent 50½ hours on the case. Marshall Ray testified that a reasonable rate in the area for lawyers doing litigation of the type in this suit was $100 an hour. Thus, the evidence would support $14,650 as Drennan's reasonable and necessary fees through trial, and $14,000 were awarded. We overrule point ten.

Having discussed the dispositive issues on appeal, we find it unnecessary to address appellant's second point of error. Tex.R.App.P. 90(a).

We MODIFY the judgment to award Drennan $74,551.04 and Valley Wide $65,-554.99, order the prejudgment interest adjusted to reflect these awards, and, as modified, AFFIRM the trial court's judgment.